Cosimo Distante
vs.
United Electric
Railways Company

W. C. A. No. 1364.

## DECISION.

### November 30, 1932.

WALSH, J. This is a petition by Cosimo Distante against the United Electric Railways Company, alleging in substance that Distante was an employee of the respondent corporation on the 21st of October, 1931, on North Main Street in the City of Providence; that while he was in their employ and was returning for his clothing, which he had placed between the rails of the employer during his working hours, after he had gone to the tool box and turned in the electric drill with which he had been working, the day's work was done and he was on his way over to get his clothing to go home, he collided with a concrete mixer which was on the easterly side of North Main Street and which was then and there operated by the Lane Construction Company in renewing the highway on the easterly side of North Main Street.

The evidence shows that at 4:28 of this day the petitioner had stopped his work with this electric drill and started to take it over across the road upon which the Lane Construction Company was working to the tool box his employer provided for him, which was then located on the southeast corner of Doyle Avenue and North Main Street; that he got to the tool box, delivered his drill to the sub-foreman, turned and went back, as he says, to pick up his clothing which he had left at the point where he had been working, and on his way across the Lane Construction work he bumped into this cement mixer and hurt his head and his leg and abdomen.

He says that he was out of work from October 21st, 1931, to December 22nd, 1931, and that his average weekly wages were thirty dollars, and he claims one-half, or fifteen dollars weekly, for the time that he was laid up; also sixty dollars for medicines and hospital bills.

The evidence in this case goes to show that the company did provide hooks on this tool box which could be used by employees for the purpose of hanging up their outer clothing while they were at work. The evidence is to the effect that there were not sufficient hooks to take care of all the employees on this tool box and that some of the employees were accustomed to use fences in the neighborhood to hang their clothing on. There is testimony that there is no rule or regulation in regard to the placing of this outer clothing by the employees by anyone in authority. Hence, we must assume under those circumstances that if the petitioner left his clothing at or about the place where he was actually employed, it was not in violation of any express regulation or any order of the employer that he should not do it, and that in so doing he was well within his rights.

This Workmen's Compensation Act was intended by the Legislature to be liberally construed, the benefit of the doubt to be given to the employee. That is the spirit in which the Act was drawn and that is the spirit in which the Act has been enforced by this Court.

We must from the evidence find two things: First, whether or not this man was an employee, in the strict sense, at the time that this occurrence took place; and also whether the occurrence itself was a risk that the employer assumed under the terms of the Workmen's Compensation Act. We are asked to rule that in view of the fact

that the man had terminated his day's work, had taken his tools and was on his way home, although he had not left the premises upon which he was working, that his employment had terminated for the day and that he was his own free agent, hence any accident that occurred to him thereafter was not covered by the Workmen's Compensation Act.

The evidence shows that he had not left the scene of his labors. He was still on the premises where he was actually at work for his boss. In those premises were other contractors. The road was apparently not open to the public. It was under repairs. It strikes me that this man was within the purview of the intent of the Workmen's Compensation Act until he got out of those premises which were under repair at the time and which were not open to the public, and the dangers incident to the repair work, whether done by the employer or by another contractor, were a risk that the employer assumed under the terms of the Workmen's Compensation Act. So we hold, as a fact, from the evidence, that when this accident took place the petitioner was acting in the course of and within the scope of his employment and that the accident to him was a risk that the employer assumed under the terms of the Workmen's Compensation Act.

Argument is made that the employer should not be held liable because the occurrence was one that happened after the whistle blew, 4:30. We think in all justice to the employer we should make a finding of fact on that, and our finding of fact on that is this: that while it is true that the actual work for the day had concluded and that the men were discharged from the actual work for the day, there was still the duty on the men to return their tools and to leave the premises before the day's work was done and before the employer's liability ceased;

and we think it was during this time that the accident happened to this petitioner. We hold the fact, from the evidence, that the employer was liable for the consequences of this accident at the time that it took place, and find the facts in favor of the petitioner.

From the statement in his petition, we find that he was disabled from October 21st, 1931, to December 22nd, 1931, a gross total of sixty-two days. Taking out for Sundays, which we figure roughly at nine, we find that he was actually out of work for fifty-three days and that is seven weeks and four days at $15 a week, which makes a total of $113.58 loss of wages. To that must be added the sum of $60 for medicines and hospital expenses, and a decree may be drawn in accordance with that order: $113.58 loss of wages and $60 for medicines and hospital expenses.

Attorneys for complainant: O'Shaunnessy & Cannon.

Attorney for respondent: Clifford Whipple.